UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

RANDELL C. CAMPBELL )
)
v. ) No. 4:13-cv-28
) *Mattice/Carter*
BRENT MYERS and SHANNON LANG )

## **MEMORANDUM and ORDER**

Randell C. Campbell, a prisoner confined in the Morgan County Correctional Complex in Wartburg, Tennessee, has filed this *pro se* civil rights suit for damages under 42 U.S.C. § 1983.

### **I. The Filing Fee**

Plaintiff's motion to proceed without prepayment of the filing fee is **GRANTED**, (Ct. File No. 10), and he is **ASSESSED** the civil filing fee of three hundred and fifty dollars ($350). Because plaintiff is an inmate, he will be allowed to pay the fee on an installment basis. Therefore, the custodian of inmate trust accounts at the institution where plaintiff now resides is **DIRECTED** to submit to the Clerk of Court, as an initial partial payment, twenty percent (20%) of the greater of either the average monthly deposits to his inmate trust account or the average monthly balance in the account, for the six (6) months immediately preceding the filing of the complaint. 28 U.S.C.§ 1915(b)(1). After the initial partial filing fee has been paid, the custodian shall submit twenty percent (20%) of plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when his monthly income

exceeds $10.00, until the full filing fee has been paid to the Clerk's Office. 28 U.S.C. § 1915(b)(2).

The Clerk is **DIRECTED** to mail a copy of this Order to the custodian of inmate trust accounts at plaintiff's place of confinement to ensure compliance with the assessment procedures outlined herein. All payments should be sent to the <u>Clerk's Office, USDC; 900 Georgia Avenue, Room 309; Chattanooga, TN 37402.</u> This order SHALL become a part of plaintiff's inmate file and follow him if he is transferred to another institution. The agency having custody of plaintiff SHALL continue to collect monthly payments from plaintiff's prisoner account until the entire filing fee of $350.00 is paid.

## II. Factual Allegations

The complaint alleges unconstitutional conditions of confinement at the Grundy County jail, where plaintiff was formerly confined. Defendants are Grundy County Sheriff Brent Myers and Sharon Lang, Jail Administrator of the Grundy County jail. The contentions in the pleading are in the format of a journal, detailing the daily events and conditions out of which plaintiff's claims arose. The Court now turns to those contentions.

1. August 13: Out of 48 inmates, 24 are sleeping on the floor, with only two bathrooms (one of which flooded for 2 days, forcing inmates to walk in the overflow or keep mopping) and two showers for inmates to use. The day room is locked down because it is occupied by two pregnant inmates who need privacy. An inmate escaped, but was apprehended three days later.

2

2. October 12-26; November 10: On October 12th, another Inmate escaped and the inmates who did not escape were blamed for not reporting the one who escaped and were then placed on 24-hour lock down. On October 26th, the lock down was decreased to 12 hours a day, from 8:00 P.M. to 8:00 A.M., but the night time lock down was not lifted until at least November 10th. The light in the bathroom, which burned out on August 13th was not replaced until October 17th. However, on that date, the tank where the bathroom was located was used to house another inmate, leaving only one bathroom for the use of the rest of the inmates. On October 26th, the light went off in the other bathroom, which is downstairs, and when jailers forgot to turn it on, inmates could not see to use the bathroom. Milk thrown on plaintiff's cell mate bounced off the intended target, hit plaintiff in the face, and ran down his arm, requiring him to shower. On certain days, visitation was restricted. Female inmates were permitted visitation on October 13th, but the next day, other prisoners were not permitted visitation. Fully electric wires hang from the wall. Inmates are exposed to second-hand smoke. There is no sunlight. There is no running water; some days, water must be obtained from the shower when an inmate goes to use the bathroom; some days, jailers do not come to the area for two to three hours; and, some afternoons, there is no water. Inmates are given Kool-Aid and, thus, have to go to the bathroom a lot, but have to wait two hours for a jailer to show up (usually at shift change). They then must wait longer while the cell door is unlocked. Tennessee law

3

requires inmates to afforded access to the bathroom every thirty minutes. Two inmates per cell can shower each day, so when there are 5 or 6 inmates in a cell, someone must stay dirty for three days, until it is his turn to shower. On October 20th and 22nd, plaintiff experienced coughing spells and asked jailers to call Dr. Harbolt. However, three inmates have to be sick to justify seeing a doctor. Everyone is denied medical help, even those whose medications have run out. Six inmates occupy a two-man cell and there is no working toilet.

Plaintiff seeks compensatory and punitive damages from the Sheriff and the Jail Administrator for the above claimed unconstitutional conditions and treatment to which he was subjected from August through November of 2012,[1] at the Grundy County jail.

### III. Screening Procedure

The Court now must screen the complaint to determine whether it should be dismissed as frivolous, malicious or for failure to state a claim or because monetary damages are sought from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) and § 1915A. In performing this task, the Court bears in mind that the pleadings of *pro se* litigants must be liberally construed and "held to less stringent

---

[1] Though the pleading does not indicate the year in which these alleged unconstitutional conditions and treatment occurred, the Court understands it to be 2012. The Court has reached this understanding because the date of plaintiff's last journal entry complaining about the conditions in the Grundy County jail is November 10 and because the date of the first transaction listed in plaintiff's inmate trust fund statement from the state prison is December 18, 2012, (Doc. 2 at 8, Doc. 1 at 6), with the indication being that plaintiff was exposed to the complained of conditions in the Fall of 2012.

standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). All well-pleaded allegations in the complaint will be taken as true and the factual allegations will be considered to determine whether "they plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009). The Court examines the complaint in light of these requirements.

### IV.  Law and Analysis

A. <u>Standing</u>

The lion's share of plaintiff's claims involve general conditions affecting inmates in the Grundy County jail, but plaintiff has not indicated how these alleged deprivations or untoward conditions have caused him personal injury.  This failure implicates the standing doctrine, which derives from Article III's restriction of federal court jurisdiction to "cases and controversies."  U.S. CONST. art. III, § 2, cl.1.  To show that he has standing, a plaintiff must demonstrate three things: (1) an injury in fact or a harm that is "actual or imminent, not conjectural or hypothetical," (2) causation, and (3) redressability.  *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (citations omitted).

Absent a plea of personal harm, plaintiff has failed to satisfy the first element. Therefore, plaintiff has not shown that he has standing to pursue the claims which allege harm to the general population of inmates but none specific to himself.  *See ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 659 (6th Cir. 2007) (observing that the standing doctrine "applies to every claim sought to be litigated in federal court").

B. *Physical Injury*

Plaintiff asks the Court to grant him monetary damages, but he does not allege, and it does not appear, that he sustained any physical injury as a result of the purported conditions. Under the Prison Litigation Reform Act, a prisoner may not bring a claim for emotional or mental damages absent a showing of prior physical injury. *See* 42 U.S.C. § 1997e(e). This provision applies to Eighth Amendment claims, as are most of plaintiff's claims, *see Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir.1997), and plaintiff has not contended that he suffered any physical injury as a result of the conditions in the jail. Therefore, § 1997e(e) does not permit him to bring these claims for damages.

C. *Visitation*

Plaintiff claims that visitation was restricted and that, while female prisoners were allowed to have visitation on one day, other prisoners were not permitted visitation on the next day. The starting point for this analysis begins with *Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984), where it was held that "[p]rison inmates have no absolute constitutional right to visitation." *Id.* at 420. Indeed, in considering a case involving prison visitation, the Supreme Court has stated that "freedom of association is among the rights *least compatible* with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (emphasis added). The Supreme Court has also observed that running a prison is an extraordinarily difficult endeavor which is "peculiarly within the province of the legislative and executive branches of government;" one for which the courts are ill suited; and one to which, ordinarily, courts will defer to prison officials' "expert judgment." *Turner v. Safley,* 482 U.S. 78, 84–86 (1987).

Given the law set forth above, plaintiff's contentions regarding the restrictions placed on inmates' visitation during the lock down period, instituted following a prisoner's escape from the Grundy County jail, is a decision by the jail authorities to which this Court will defer.

Furthermore, if the allegation concerning female prisoners' visitation is intended to state a claim for denial of equal protection, plaintiff has not supplied the necessary factual details to make out such a claim. The Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The centerpiece of this Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Gatlin ex rel. Estate of Gatlin v. Green*, 362 F.3d 1089, 1094 (8th Cir. 2004) ("For any equal protection claim, the threshold inquiry is whether the [claimant] is similarly situated to others who allegedly received preferential treatment.") (internal citation marks omitted). To state an equal protection claim, plaintiff not only must show that he was similarly situated to the female inmates but likewise must establish that a discriminatory purpose was a factor in the challenged decision not to permit other inmates to have visitation. *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265-66 (1997).

Here, plaintiff has not presented any circumstances to show that he is similarly situated to the female prisoners in all respects significant to the decision to permit visitation. *See Keevan v. Smith*, 100 F.3d 644, 649 (8th Cir. 1996) ("There can be no . . . meaningful comparison for equal protection purposes between two sets of inmates who are not similarly situated."). Nor has he demonstrated that a

7

discriminatory purpose underlay the questioned decision. This claim, reduced to its essence, is that, on one occasion, female inmates were treated differently than other inmates. A mere difference in treatment does not offend the equal protection clause. *See Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992) ("[P]laintiff could not make out a violation of his equal protection rights simply by showing that other inmates were treated differently"). Plaintiff has not stated a claim for violation of his right to equal protection.

D. *Eighth Amendment Claims*

Only two of plaintiff's allegations relate to plaintiff individually, but both involve supposed Eighth Amendment violations.

It is now well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). An Eighth Amendment claim is composed of two parts: an objective component, which requires plaintiff to show a "sufficiently serious" deprivation, and a subjective component, which requires him to show a sufficiently culpable state of mind —one of deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 and 842 (1994). Where prison conditions are concerned, the objective factor is satisfied by a condition which denies the prisoner "the minimum civilized measure of life's necessities." *Id*. at 834.

Where the condition involves medical care, the Eighth Amendment is violated when a prison official is deliberately indifferent to an inmate's serious medical needs. *Estelle*, 429 U.S. at 103. A prison official, however, cannot be found deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837. "Deliberate indifference is more than

8

negligence and approaches intentional wrongdoing." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (citation and internal quotation marks omitted).

The two allegations which relate to plaintiff individually are that plaintiff was hit with milk which bounced off his cell mate, who was the intended victim, and that plaintiff did not receive medical care on two occasions for coughing spells, though he asked jailers both times to call a doctor.

The "milk" claim appears to fit closest into a category of claims which involve a failure to protect a prisoner from violence from other inmates. The objective component in a failure-to-protect claim requires an inmate to show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Not every injury a prisoner sustains at the hands of other prisoners warrants the imposition of § 1983 liability; only where the deprivation is "objectively, sufficiently serious" does it implicate the Eighth Amendment. *Id*. (internal quotation marks omitted). A sufficiently serious deprivation occurs, in the context of an Eighth Amendment medical claim, when a prisoner experiences a serious medical need.

In neither claim is the objective component satisfied, since plaintiff has not shown that being splashed with milk on one occasion posed a "substantial risk of serious harm" to him or that coughing spells, without more, constitute an objectively serious medical need. *Jones v. Correctional Medical Services*, 2008 WL 1882655, *2 (E.D. Mo. Apr. 24, 2008) (finding that "nightly spells of 'coughing and choking'" not a serious medical condition); *Crisp v. Snyder*, 2007 WL 2199707, *15 (E.D. Mich. July 27, 2007) ("The fact that Plaintiff may have been coughing does not . . . amount to deliberate indifference to any serious medical need.").

Nor has plaintiff demonstrated the subjective component of his Eighth Amendment claims since he has failed to allege that either of the named defendants actually knew about plaintiff's incurring a risk of having milk, which was thrown at another inmate, hit plaintiff; of plaintiff's coughing spells; or his requests for medical care. Thus, there is nothing from which to infer that these defendants possessed the requisite state of mind of deliberate indifference. Because neither component of plaintiff's confinement conditions and medical treatment claims has been satisfied, he fails to state a claim under the Eighth Amendment which would entitle him to relief. *Farmer*, 511 U.S. 834, 842 (It must be established that the questioned condition posed an excessive risk to the prisoner's health or safety to which a defendant was deliberately indifferent.).

E. *Supervisory Liability*

To the extent that plaintiff has named the Sheriff and the Jail Administrator as defendants based on a belief that they bear overall responsibility for running the Grundy County jail and for supervising the conduct of the jailers, this is not a viable basis for relief. This is so because § 1983 liability must be based on more than respondiat superior, or a defendant's right to control employees. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("vicarious liability is inapplicable to ... § 1983 suits"); *Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995). A "simple awareness of employee's misconduct" is not enough. *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003). Unless there is some affirmative showing that defendant Sheriff and Jail Administrator authorized, approved, or knowingly acquiesced in the alleged conduct of the jailers, plaintiff has failed to state a § 1983 claim against these two defendants. *Walton v. City of*

*Southfield*, 995 F.2d 1331, 1340 (6th Cir.1993); *Bellamy*, 729 F.2d at 421. The complaint contains no allegations to establish the showing which must be made.

### V. Conclusion

In light of the above law and analysis, this case will be **DISMISSED** *sua sponte* for lack of constitutional standing and for failure to state a claim for relief. Had plaintiff stated arguable § 1983 claims and had he asked to amend, the Court would have allowed it, *LaFountain v. Harry*, 716 F.3d 944 (6th Cir. 2013), but since many of the noted deficiencies are fatal to his case, it would be futile so to do.

A separate order will enter.

**ENTER**:

/s/Harry S. Mattice, Jr.
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE